UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Kelly Ann Worden,

                          Plaintiff,

      v.

Commissioner of Social Security,

                          Defendant.

**Decision and Order**

18-CV-923 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 9, 16.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

3

Of the issues that plaintiff has raised, the one that draws the Court's immediate attention concerns the level of detail in the RFC that the ALJ determined. The ALJ found two severe impairments: syncope and below-average cognitive functioning. [19.] After considering potentially applicable medical listings, the ALJ concluded that plaintiff had the capacity for sedentary work with limitations. The limitations contained considerable detail; for the sake of demonstrating the level of specificity in the RFC, the Court reprints the RFC in its entirety here:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is able to lift, carry, push and pull up to 10 pounds occasionally and less than 10 pounds frequently. She can stand for two hours and walk for two hours but she requires the ability to alternate to sitting for two minutes after 30 minutes of standing or walking. She can climb stairs and ramps occasionally but never climb ropes, ladders or scaffolds. She should not perform repetitive stooping, kneeling, or crouching and she should never crawl. She is limited to hearing and understanding simple oral instructions. She could never work at unprotected heights, around moving mechanical parts or operate a motor vehicle. She should never work in humidity or wetness, or around dust, odors, fumes and other pulmonary irritants. She should not work in extreme heat and requires air conditioning or controlled atmosphere. She should have no more than incidental requirement for reading, writing or math for job-related content, taking messages or following task-related instructions. Time off task can be accommodated by normal breaks.

[21.] Plaintiff objects that the RFC lacks a clinical foundation. Of the physicians who provided information about physical limitations, no physician received more than "partial" or "some" weight. If no physician received controlling weight, in plaintiff's view, then the level of detail that appears in the RFC must mean that the ALJ made his own interpretations of raw clinical data:

> In this case, there are no medical opinions for Plaintiff's physical impairments. The ALJ drew this RFC on his own from the bare medical findings and then does not provide analysis for the very specific limitations. He found Plaintiff able to stand and walk for two hours but requires the ability to alternate to sitting for two minutes after 30 minutes of standing or walking. T 16. This did not come from a medical opinion. It also did not come from testimony. Plaintiff testified she usually would switch positions completely every one and half to two hours. T 39, 40. This is similar to the error in *Cosnyka*. 576 Fed. Appx. at 46. There, the ALJ found plaintiff needed to break for 6 minutes every hour, which had

4

no basis. *Id.* Similarly here, the ALJ did not rely on any medical evidence to come to this decision. Thus, this highly specific RFC was unsupported by substantial evidence.

(Dkt. No. 9-1 at 17; *see also* Dkt. No. 17 at 4.) The Commissioner responds that crafting an RFC always is an ALJ's responsibility, and the ALJ here had discretion to make reasonable inferences from raw clinical data:

> In this case, the ALJ did not simply rely upon his lay opinion in assessing Plaintiff's RFC, but instead carefully reviewed the evidence as a whole in concluding that although the record indicated that she experienced some limitations as a result of her syncope, she failed to establish that her syncope symptoms precluded her from a reduced range of work activity (Tr. 16-20). In doing so, and as discussed above, the ALJ explained that he had accorded partial weight to Dr. Bhayana's July 2011 medical source statement, as well as some weight to Dr. Toor's opinion regarding limitations caused by syncope (Tr. 18-19, 658-59, 663-64). The ALJ also discussed Plaintiff's testimony regarding the variation in the physical demand of her current job—which allowed her to rotate among several functions in the production cycle, some including sitting down work—as consistent with what she reported was her doctor-imposed limitations to, in her words, perform no long periods of standing, walking, and sitting (Tr. 19, 35-38). The ALJ also pointed out that Plaintiff took her current job in 2015 not because of a change in her health condition, but instead because she wanted to earn more money—which suggests that she was not incapable of her current level of work activity prior to that time (Tr. 19, 40-45, 60). And while the ALJ discounted Dr. Bhayana's opinion that she could not lift or carry any weight and was limited to standing/walking less than two hours total in an eight-hour workday, the ALJ nevertheless reduced Plaintiff's RFC to a range of sedentary work in air-conditioned or controlled atmosphere environments with the ability to stand for two hours and walk for two hours and the option to alternate to sitting for two minutes after 30 minutes of standing or walking, and with her time off-task to be accommodated by normal breaks (Tr. 16-20). The fact that the ALJ's RFC finding was allegedly too highly specific because it was not based on a medical opinion does not mandate remand here.

(Dkt. No. 16-1 at 24–25.)

Plaintiff has the better argument. "While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him." *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and

5

citation omitted); *see also House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) ("[A]lthough the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (internal quotation marks and citations omitted); *Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 339 (W.D.N.Y. 2008) ("An ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion."). Here, the ALJ crafted a very specific RFC that included considerable details about lifting, carrying, pushing, pulling, standing, stairs, ramps, ropes, humidity, and wetness, among other conditions. After searching the administrative record, the Court cannot find any raw clinical data that would support such a high level of detail. Over the years, plaintiff was found not to have active cardiopulmonary disease. [528, 551.] Plaintiff had no bronchitis in her past history. [541.] A diagnosis of an ulcer in 2011 would not obviously lead to the details in the RFC. [583.] Neither would the RFC naturally follow from a few incidents of dermatitis or rashes. [849, 986, 998.] Plaintiff had some syncope episodes over the years, and the ALJ acknowledged syncope as a severe impairment. [739, 970, 1051.] Plaintiff had what appeared to be short-term limitations in ranges of motion in connection with times when she fainted and fell, or, as in one instance, slipped on ice. [*E.g.*, 925, 976, 1021, 1065.] An isolated clinical comment from July 11, 2012 suggested only that plaintiff stay well hydrated in hot weather. [1043.] Dr. Harbinder Toor, a consultative examiner, examined plaintiff on September 8, 2011 and provided a medical source statement with no limitations for gross and fine motor activities. [668.] Dr. Toor—discounted to some and also little weight by the ALJ anyway—mentioned at most that plaintiff's "syncope can interfere with her routine." [668.] The medical opinion from Dr. Ranjan Bhayana that the parties have cited

6

extensively and that the ALJ gave only partial weight is not much of a medical opinion at all. On July 19, 2011, Dr. Bhayana completed a form for the New York State Office of Temporary and Disability Assistance. [659.] The form includes a checkbox and a comment, without further explanation, that plaintiff should avoid strenuous activity and all lifting and carrying. [663.] The form has additional checkboxes concerning standing, walking, and sitting, again without any explanation. Also without explanation or context, the form concludes with a comment that plaintiff "needs to be in [an] error-conditioned environment, [because] heat/humidity is a trigger." [664.] The disability form and its completed checkboxes are of limited use in the absence of supporting clinical data in the record. *See Shipp v. Colvin*, No. 16-CV-919 HBS, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) ("The remainder of the checkmarks in the questionnaire come with no explanation and are too conclusory to oppose a consistent medical record. The Second Circuit has held that such standardized form opinions are only marginally useful for purposes of creating a meaningful and reviewable factual record.") (internal quotation marks and citations omitted). Between the absence of relevant clinical data in the record, marginally useful opinions in checkboxes, the discounting of plaintiff's testimony [22], and physicians discounted by the ALJ in any event, the Court is forced to conclude that the ALJ made his own medical judgments to arrive at the extensive details in the RFC. *Cf., e.g., Benman v. Comm'r*, 350 F. Supp. 3d 252, 260 (W.D.N.Y. 2018) ("Having reviewed the record, the Court finds that it is neither clear nor complete and does not contain a useful assessment of Plaintiff's physical limitations."); *Helmer v. Astrue*, No. CIV.A.1:07-CV-203-C, 2008 WL 4682552, at *4 (N.D. Tex. Oct. 22, 2008) ("Because the ALJ's decision fails to indicate the evidence in the record relied upon in making the RFC assessment and given that the ALJ rejected the opinion of Plaintiff's treating surgeon regarding the limitations imposed by his impairments, rejected the opinions of the SAMCs regarding Plaintiff's ability to

perform work activity, and found that Plaintiff's testimony and allegations regarding the limitations imposed by his impairments were not entirely credible, it is not clear what evidence in the record the RFC determination was based upon. Further administrative proceedings are thus necessary."). This was improper and requires remand.

In ordering remand, the Court is concerned principally with making sure that any RFC be sufficiently linked to a credible physical functional assessment from an appropriate source. An additional consultative examination might be helpful. *See* 20 C.F.R. §§ 416.919a; 416.920b(b)(iii). The Court takes no position at this time as to whether the RFC in its current form eventually can be supported by substantial evidence. The Court also declines to address any other issues that the parties have raised. Upon remand, the Commissioner is free to revisit the other issues as might be appropriate.

## III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 16). The Court grants plaintiff's cross-motion (Dkt. No. 9) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                   __/s Hugh B. Scott_____
                                                   Hon. Hugh B. Scott
                                                 United States Magistrate Judge

DATED: October 25, 2019